PAUL K. CHARLTON
United States Attorney
District of Arizona

LISA JENNIS SETTEL
Assistant U.S. Attorney
Two Renaissance Square
40 N. Central Avenue, Suite 1200
Phoenix, Arizona 85004-4408
Telephone (602) 514-7500
Lisa.Settel@usdoj.gov

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>            Plaintiff,<br><br>     v.<br><br>Jesus Medina-Nevarez,<br><br>            Defendant. | CR-05-225-01-PHX-RGS<br><br>**UNITED STATES' RESPONSE TO DEFENDANT'S OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORT** |

The United States, through counsel undersigned, responds in opposition to defendant's objections to the Presentence Investigation Report (PSR).

**A.   RULES ESTABLISHED BY *BLAKELY* AND *BOOKER***

Defendant contends that ***Blakely v. Washington,*** 124 S. Ct. 2531 (2004) and ***United States v. Booker***, 543 U.S. 220 (2005), preclude the imposition of a sentence beyond the base offense level because such facts were not specifically found by the jury. Neither case holds that a jury must make separate findings of fact in order to sentence a defendant beyond the base offense level. Here, none of the sentencing enhancements increase the maximum sentence under the statute since the maximum under 18 U.S.C. Section 1203 is life. Under the current state of the law, this Court may sentence defendant based on any facts that are "reflected" in the jury verdict or that are admitted by the defendant. ***Blakely***, 124 S. Ct. at 2537. Based on the evidence presented at trial and admissions of the defendant, co-conspirators, and victims to federal agents, the additional enhancements are appropriate.

The defendant objects the adjustment for number of victims, ransom demand, vulnerable victim, and leadership role. The defendant's objections are without merit. Judicial fact-finding is erroneous only when coupled with a mandatory guidelines system. *United States v. Ameline*, 409 F.3d 1073, 1081 (9th Cir. 2005). In *Ameline*, the Ninth Circuit directed district courts to apply the appropriate burdens of proof, consistent with *United States v. Howard*, 894 F.2d 1085 (9th Cir. 1990), to resolve factual sentencing disputes. *Ameline*, 409 F.3d at 1086. In *Howard*, the Ninth Circuit adopted "the rule that the government should bear the burden of proof when it seeks to raise the offense level and that the defendant should bear the burden of proof when the defendant seeks to lower the offense level." *Howard*, 894 U.S. at 1090. The court then explained that "the party bearing the burden of proof will be required to meet a 'preponderance of the evidence' standard." *Id*. Thus, current case law does not support defendant's contention that the government must satisfy a beyond a reasonable doubt standard at sentencing.

A. **NUMBER OF ALIENS AND BODILY INJURY**

In this case, it was clear that at least 56 illegal aliens were found at the residence on the date that law enforcement rescued the alien at the residence on 27th Drive. That was proven at trial through testimony and is confirmed through interviews of all 56 aliens. It was also clear through testimony and admission of the pollo lists that more aliens passed through the home between the time it was rented out on January 15, 2003 and the date the aliens were discovered January 28, 2003. Also, co-conspirators admitted under oath that more than 100 aliens were held at this house. See plea agreement of Fabian Franco-Saenz in CR-04-965-PHX-SMM. The victims that testified at trial fully described their injuries and there were photographs of corroborating the extent of those injuries. Burn wounds and pistol whipping injuries requiring medical attention clearly fit the definition of serious bodily injury as defined in U.S.S.G. Section 1B1.1. Witness Abraham Farfan explained that he still suffered from headaches as a result of his injuries.

B. **RANSOM DEMAND**

It is undisputed that the aliens were not allowed to leave the house without payment by a third party. Again, this was proven through testimony at trial, the admission of the pollo lists,

the plea agreements of co-defendants and co-conspirator, and statements made by seven other victims who did not testify at trial but who were interviewed by federal agents.

The defendant claims that the increase for ransom demand is improper because the jury did not make a specific finding of a ransom. The general verdict of guilty on conspiracy to violate 18 U.S.C. § 1203 incorporates the facts necessary for a 6-level enhancement under U.S.S.G. § 2A4.1(b)(1) since the government charged an agreement to commit a specific type of hostage-taking: holding illegal aliens until the payment by a third party of money, i.e. a ransom demand. The jury could not have convicted defendant without finding an agreement to take illegal aliens hostage for ransom. In addition, the Ninth Circuit has held that a "ransom enhancement applies anytime a defendant demands money from a third party for a release of a victim, regardless of whether that money is already owed to the defendant." *United States v. Sierra-Velasquez*, 310 F.3d 1217, 1221 (9th Cir. 2002). Therefore, the six level increase was properly applied.

**C.    VULNERABLE VICTIMS**

The Ninth Circuit is clear in its decision in *Sierra-Velasquez*, that the illegal status of aliens held in a hostage taking case makes them more vulnerable than other types of hostages. *Id*. at 1220. A hostage taking case is distinguishable from smuggling cases since the illegal status of the aliens is a required element of the latter offense. Here, the defendant would still be guilty of hostage taking if the victims were United States citizens. However, since evidence presented at trial by the victims and the defendant was that the people held at the residence in this case were unlawfully in the United States and since the jury also convicted of harboring illegal aliens, the vulnerable victim enhancement is appropriate.

**D.    LEADERSHIP ROLE**

Defendant and his co-defendant Ruben Franco-Plaza directed the smuggling and hostage taking conspiracies. Jorge Contreras-Nicanor identified the defendant as the boss well before defendant was arrested. PSR ¶ 6(C). Victim Bernardino Garate-Hernandez identified defendant as the boss who gave everyone orders and told the other smugglers what to do. PSR ¶ 6(E). Co-defendant Gerardo Lazaro-Ascencio identified defendant Medina-Nevarez and Franco-Plaza as

3

the bosses at the house. Even the defendant in his interview with federal agents admitted to smuggling aliens for years.

This defendant was a leader of the most heinous hostage taking prosecuted in this District. The torture endured b by the aliens at this house were unimaginable. The defendant has a long history of being involved in hostage taking and in violence. His actions are precisely those that the sentencing commission intended to punish with life. As such, the defendant should be sentenced to life followed by another life term for his use of firearm in violation of 18 U.S.C. Section 924(c).

Respectfully submitted this 19th day of January, 2007.

PAUL K. CHARLTON
United States Attorney
District of Arizona

S/Lisa J. Settel

LISA JENNIS SETTEL
Assistant U.S. Attorney

Certificate of Service

I hereby certify that on the 19th day of January, 2007, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants: Michael Reeves and Jeannie Moreno